Good morning, Your Honor. May it please the Court. My name is Amy Joseph Peterson. I'm here with my colleague, Susan Douceau, on behalf of the appellant Nike. I'd like to reserve three minutes of my time, and I recognize that it's my obligation to watch it. This case involves the interpretation and application of the constructive discharge provision of Montana's Wrongful Discharge from Employment Act. The constructive discharge position, it is Nike's position, should be interpreted and applied such that it is consistent with the plain meaning of the statute, the legislative intent of the statute, and prior Montana Supreme Court decisions. The District Court failed to do that here, and Nike asks that this Court reverse the judgment and enter judgment for Nike. In addition to that, because the plaintiff's own evidence, and Nike only relies on the plaintiff's evidence, establishes that the job was in fact not objectively intolerable, it establishes that she did have a reasonable alternative to quitting, and it establishes that her dispute concerned only the terms and conditions of her employment. Because of those three admissions, we contend that no reasonable finder of fact could have found for the plaintiff, and Nike therefore asks that judgment be entered in its favor as a matter of law. Counsel, you seem to feel that conditions has a meaning that would include a job which was undoable. That's where the point of view is on this. I thought we would get to that issue right away, Your Honor. I think we need to get to it first. I agree. The statute and the case law says that a discharge in Montana can only be wrongful if the employer does not have good cause. Good cause in the statute is defined as a legitimate business reason, and under Buck, legitimate business reason is defined to include the reasonable logically related business needs of the employer. Therefore, if what the plaintiff is contending makes her job reasonably or makes her job intolerable, or the terms and conditions of her employment that the employer has imposed, as a matter of law, there hasn't been a constructive discharge so long as those terms and conditions have been imposed because of the reasonable needs of the employer. Can't the district court find that, you know, it was, as Judge Fletcher said, it was not doable, that it was intolerable? The court did find that the job was not doable. Right. We contend that that was error for several reasons. Let's assume for the sake of argument that the district court was right on that because you're arguing an area of law. So I know and accept the fact that you hotly contest whether or not that finding is appropriate. But if the job, in fact, can't be performed, if the terms and conditions are changed so that the job can't be performed objectively, isn't that a constructive discharge? No. Assuming that the job cannot be performed, there's still one more step. There are actually two more steps in the evaluation. One step is to determine whether or not she had a reasonable alternative to quitting. And then the final step in the analysis, according to all the cases, is to examine whether or not the employer had a legitimate business reason for altering the terms and conditions. I don't think there's a Montana case that says that a legitimate business reason includes setting a standard that can't be performed objectively by any employee. Bob doesn't stand for that. I'm sorry, say that again, your Honor. I don't think there's a Montana case that says a legitimate business reason can include setting standards or terms and conditions that can't be objectively performed by any employee. Well, there are several Montana cases that say that objective intolerability can be trumped, if you will, by the legitimate business needs of the employer. I don't think there's a case that goes as far as what you're advocating in this case is assuming, again, hypothetically, that the job can't be performed, that you change the terms and conditions so the job can't be performed, that that can constitute a legitimate business reason. I think you're right, your Honor. If there was a case out there where the job was objectively intolerable. The job can be performed. You change the terms and conditions so objectively you can't perform the job. You can't satisfy the terms and conditions of the job at all. I don't think there's a Montana case that says that's a legitimate business reason that's defensible under the statute. And I suppose the answer is yes. I think you're right. There's no Montana case that says that. And I suppose that would be because, by definition, if you have purposely set the terms and conditions in such a way that they objectively can't be performed, then you don't have a legitimate business reason for doing so. Or even knowingly. Or even knowingly. But that's not what this case is. What this case is, and as the plaintiff conceded, everything that she complained about was the manner in which she wanted to do this job. She wanted to do this job in a manner in which allowed her personal contact with her customers at her customers' retail places of business. That's not the manner in which Nike designed the job to be done. Nike told her that that wasn't necessarily how the job needed to be done. She insisted that that was how she wanted to do the job, and as a result she contends that it became objectively intolerable. She admits that she performed the job. She accomplished what she needed to accomplish within 19 days rather than the 20 days that were allotted to her. She admits that she did it in a highly successful manner. She admits that Nike didn't criticize her for it. She admits that this is ER 129, 130. She wanted to do the job her way. She admits at ER 215, I felt that it was not the right thing to make my account strive to see me. ER 125, she admits she wanted to see her accounts in person. And ER 215, I feel that the quality of my service has to be considered and the quality of my life. And finally, when she gave her reasons for discharge in ER 304, she said that the reason was because she did not want to scale back her service. All of that goes towards an incorrect finding by the district court that this job was objectively intolerable. Instead, what all the evidence demonstrated and all of it right out of Ms. Johanson's mouth was that the job was only objectively intolerable if one assumes that the only way to perform the job was as she wanted to perform it. And that's not her prerogative. What the Montana statute says- Yes, but there's no, I mean, again, we look for a clear error in the finding. And there really isn't any objective evidence in the record that anyone could do the job, even according to Nike or the way the specifications that you're describing. No one has. Well, I think that's not accurate, Your Honor. The evidence in the record is that there were other geographies that were larger than hers. There were other geographies that had more accounts than hers. And there were other geographies that had greater revenues than hers. No, but on the other hand, there is evidence that supports the district court's finding, isn't there? I don't believe so, given her admissions- For one, as soon as she quit, they cut back the territory. Well, that's not accurate, Your Honor. What they did after she quit is they restructured again for the umpteenth time, as they had done prior to when she was working. And what they did is they consolidated footwear, apparel and equipment and team sports all in one state. It was an entirely different job than she had ever performed. But it was more geographically feasible, which is what she wanted. And it was restructured shortly after she said, I can't handle this geographic area. It was restructured geographically, Your Honor. That is true. What she was complaining about was the amount of travel that she had to do in her job. And what she testified to is that she actually performed this territory in 19 days rather than the 20 days that had been allotted to her. What she said is that she was not able to perform, to cover that territory in the manner in which she wanted to cover that territory. And what the Montana statute says is that that's not a constructive discharge. If you aren't able to perform the job that you want to perform in the manner in which you want to perform it, you have not been constructively discharged. You have chosen to quit. So, for example, in the, I believe it's the Finstead case, where the man worked for Montana Power in Cutbank, and he was told that his job was being moved to Butte. And he said, no, that's not in the employer's best interest. I've got things that I've got to do in southern Alberta, and it's going to be harder for me to do it from Butte. I'm going to have to drive more. It makes the job intolerable. And the court says, no, that's not for you to decide. That's for the employer to decide. If the employer has a legitimate business reason for doing what it's doing, and it's a reason that's not false, arbitrary, capricious, or whimsical, then you have not been constructively discharged. You have chosen to resign. Counsel, isn't there evidence in the record that some Nike employees said that the job couldn't be done? I think the evidence in the record that you're referring to, Your Honor, was evidence from other salespeople who agreed that this territory was very large. And that could be considered by the district court judge. We're trying to decide whether what she said and decided was clearly erroneous. I understand that, Your Honor. But the evidence in the record from the plaintiff was that she did, in fact, perform it. So the issue is, can you take the opinion of others, including Mr. Winterholer, who had never actually performed this territory, and contrast this with the fact that she, in fact, did perform it and conclude as a matter of law that it was an undoable job? It's not as a matter of law. It's a finding made after balancing the evidence. It's a finding of fact that's subject to a clear review. You're right, Your Honor. I misspoke. It's a finding of fact, and it's a finding of fact that flies in the face of the admission of the plaintiff. If I might, Your Honor, move off of the doable, objectively intolerable prong and move on to the reasonable alternative prong, because even if this court were to find that there was evidence from which the district court could conclude that the job was objectively intolerable, she did not address the no reasonable alternative. I'm sorry. She did address the reasonable alternative, but she ignored in her findings of fact the admission from the plaintiff when asked on the stand, wasn't it a reasonable alternative for you to attend the meeting with Mr. Winterholer and Ms. Ebert and see what they had to say? She admitted, yes, that was a reasonable alternative. Well, that was raised in a slightly different context, again crediting what the district court says on the deferential standard. The alternative to her job wasn't attending the meeting. The alternatives were supposed to be presented at the meeting, but she was already given three alternatives, none of which led to anything that was going to lead in. The three alternatives she gave was going to lead to her termination or resignation. There's just no doubt about that. The three alternatives she was given by Ms. Amos occurred, and then she wrote to her boss and said, I will not scale back my service. Nike only cares about its bottom line. It's not an option for me to do the late spring. That's what she said, and it was after that that her boss wrote to her and said, you're already planning to be here tomorrow for the Portland meeting, for the sales meeting that's a reasonable expectation of your job that you've never complained about as being onerous or burdensome, and as a result we'll meet with you here tomorrow to discuss your issues. And she admits that she had already decided to quit her job. She had already decided she had missed her plane. He did not respond to her e-mail, however. The final e-mail where she said, I've already missed my plane? No, where she says to them, I have received these three alternatives from the human relations person, and is there any change? What she does is she says on September 12th in the afternoon, she says, covering the five states again for late spring is not an option for me. I'm not willing to compromise my work ethic by being forced to scale back my service. At the end of the day, it's Connie that has to stand up in front of these accounts, not Nike. After that e-mail, Mr. Winterhaller says, Ann and I would like to meet you tomorrow in Portland to discuss your issues. She then writes back and says, I've already missed my plane. I'm not attending. It says, unfortunately, I've already missed my flight. This has gone on too long, and I'm too beat up. You have about a minute 15 left. Do you want to reserve? Yes, thank you. May it please the Court. I'm Stephen Pohl. I represent the plaintiff and appellee in this matter, Connie Johansson. The first issue that came up, I think, is the fact that this is an issue of fact. The Montana Supreme Court has said in all of its constructive discharge cases that whether the conditions were rendered objectively intolerable is an issue of fact for the fact finder. And so I think counsel has strayed into confusing facts in law. The Court is correct. This is a clearly erroneous standard, which means the Court only reverses in cases where there is a definite and firm conviction that a mistake has been made. And I don't think any of the facts that were recited by the district court, based on the totality of the circumstances, can be said to be clearly erroneous. The issue that was discussed here regarding the legitimate business reason is not an issue that was raised at the trial court level. We didn't see that until the briefs of the appellant here. And what they have done is they have attempted to I'm sorry, I'm sorry. Which issue is that? That wasn't raised? The issue that counsel is arguing that there has to be some, I guess it would be an illegitimate business reason prompting the employee's voluntary termination. That issue was not raised at the trial level. It was not submitted as an issue of law for the Court to determine. It was not raised as an issue of fact. Is that the same issue, though, as to whether or not the discharge was wrongful? Well, what's the difference? No, it isn't. The difference is that the statute, which can be found in the addendum that's attached to appellant's opening brief, the statute sets out what a wrongful discharge is. It says that a discharge is wrongful only if it's one of those three kinds of terminations. The first one is the public policy issue, whether the employee refused to violate a public policy. The second one is the discharge was not for good cause. And then the third one is the employer failed to follow its own. And we're concerned with the second one, right, whether it was for good cause. And good cause embraces a legitimate business reason, right? Well, actually, it does, but only in involuntary termination cases. And that's where I wanted to direct the Court's attention to the definitions in that statute. The definition of discharge says it includes a constructive discharge and any other termination of employment, including resignation, layoff, reduction in force, et cetera. Then there's a definition of good cause. And the key word in that definition is it says good cause is reasonable job-related grounds for dismissal based on, essentially, performance deficiencies, disruption of the workplace, or other legitimate business reason. Dismissal, taken in conjunction with the other kinds of dismissals mentioned there, means involuntary termination. So you're saying dismissal doesn't include constructive discharge? Correct. Because a constructive discharge is not an employer deciding to terminate. It's an employee resigning because of intolerable work conditions. Do we have a Montana case on that point? There isn't. I'm just interpreting this. Yes, I understand. And so it's never come up. Just off the top of my head, it sounds surprising to me that a discharge wouldn't include a constructive discharge. It does, and that's the very first thing in the definition of discharge. A discharge includes constructive discharge. Well, and it says discharge is not for good cause. So that means a constructive discharge is not for good cause. A constructive discharge. And good cause includes a legitimate business reason. Well, you're correct. A constructive discharge is mutually exclusive from a dismissal because the employee is quitting. So if you look at the statute then, it says a discharge is wrongful only in the three following situations. Number two is it was not for good cause and the employee had completed the employer's period of probation. So what you're saying really is a good cause, so to speak, is not a defense for constructive discharge. Correct. It doesn't make any sense at all, does it? Well, it's not relevant. And you have to go back to the definition of discharge and the definition of constructive discharge. If discharge includes a constructive discharge, then the statute, when it says a discharge is wrongful only in the following situations, you could say a constructive discharge is wrongful because, number one, it doesn't include involuntary terminations. It doesn't include dismissals. So a constructive discharge by itself, it's sort of a stand-alone beast in this statute, is wrongful by definition, so long as the employee has completed the probationary period. So a constructive discharge is never one that is with good cause because it's not a dismissal initiated by the employer. So under your theory, then, the key element in terms of the case as litigated would be whether or not it – let me just read the sentence. Constructive discharge does not mean the voluntary termination because of an employer's refusal to promote the employee or improve wages, responsibilities, or other terms and conditions in employment. Correct. In other words, their argument is it wasn't – there wasn't a constructive discharge because it didn't meet that definition. Yours went to the contrary. Well, they make two arguments. The one that you just addressed, focusing on that second sentence of the constructive discharge definition, that's the one that they made at trial. They said – No, I understand. I hear their argument. This is the new one saying there has to be some good cause determination, and there doesn't. And the Montana Supreme Court said in that Jarvenpa case, after they repeat the definition and say it's an issue of fact, they say a constructive discharge is no less wrongful than an actual firing. Well, let's assume for the sake of argument that we considered – defense to constructive discharge. Is it the employer's burden to show legitimate business reason or the plaintiff's? Well, the employer would have to show that. And in this case, they didn't make any attempt. They weren't – that wasn't an issue. No, I understand that. I'm just – I'm moving back a little more theoretically because, of course, in the normal discrimination case, that would be the employer's burden. Here, though, in the statute, if you define wrongful discharge as one without good cause, there's an argument to be made that, in fact, it's the plaintiff's burden to show the absence of legitimate business reason, at least on a prima facie basis. Do you see what I'm saying? I do, and I don't agree with that. I don't see – It was interesting to me. I mean, I'd always assumed that legitimate business reason was affirmative defense. I looked in the Montana Pattern Instructions. It doesn't say one way or the other. It's only an affirmative defense in cases where you allege that you were fired without good cause, and then the employer has to argue affirmatively, we did have good cause to terminate you. But if you look at – excuse me one second. Well, how was this tried to the district court? And was the issue of good cause raised before the district court? No, it was not. Do you have a final pretrial order? It's contained in the Appendix 2, the Volume 2. Okay. Sorry, I interrupted. That's all right. And, again, they didn't raise that as an affirmative defense. Now, actually, we did argue similar. There's this Kestel case that both parties have discussed, and we did assert that, based on the facts here, it really looked like they terminated her before she ever told them she was resigning. And that was not our primary focus, of course, because she would have ended up resigning anyway. It's just that they didn't get any notice from her that she was resigning before Mr. Winterhalter wrote the memo to his boss that contained the admitted false statements. Trying to defend himself for letting her get away is what it sounded like. So we alleged there wasn't good cause to terminate her, but, in the alternative, it was a constructive discharge, and that was the far more compelling case, and that's the only one the district court focused on. She didn't even address the involuntary termination issue. But I just wanted to repeat from one of the cases, the Kestel case, citing a previous Montana Supreme Court case, the Buck case, said that – and Buck was the case in which a manager, the general manager at the Billings, Montana Chevrolet, was replaced when a buyer came in and bought it and replaced him with one of his own people. And so he was terminated. It was not a constructive discharge case. And the court said that an employer's legitimate right to exercise discretion over whom it will employ must be balanced, however, against the employee's equally legitimate right to secure employment. The balance should favor an employee who presents evidence and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary, or capricious and unrelated to the needs of the business. So that makes it very clear it's the employer who is saying in terminations, involuntary terminations, we had a legitimate business reason, not the employee. The employee is resigning not for any legitimate business reasons, but because of objective facts established that prove that the job was intolerable. So that's a non-issue. And because it was not raised, not singled out as an issue of law in the pretrial order, I don't believe that that issue can even be argued or considered by the court here today. The main issue is their argument that they did raise at the conclusion of the plaintiff's evidence that if they refused to improve conditions, that's not wrongful discharge. And again, the Supreme Court has said the determination is an issue of fact. So the district judge did weigh that argument, weighed all the evidence, and made the determination, no, she did not quit because they refused to improve her conditions. She quit because they gave her a job that her boss admitted was not doable. So the case is decided then on the clearly erroneous standard based on the totality of the circumstances. And one point I'd like to make is that Nike has focused entirely on this statement they say she made in which they say she admitted that she could do that job that Mr. Winterhalter gave her to do. And that is not what she acknowledged. What they keep referring to was her performance evaluation for that whole year that happened to take place within that time that she was trying to do this new route with all the additional job responsibilities. And she just wrote in her self-evaluation before she even went to her meeting with Mr. Winterhalter that I feel that given all the work that they give me to do, essentially I do a good job. She never said, she never commented on I was successful in doing this route. She was simply talking about the four quarters that previously, that had just passed. The other thing about that was that counsel argues that she did it in 19 days instead of 20. What she said was she had to cut her responsibilities short and she did the same amount of time because there was only 20, 19 or 20 days to drive and get all the other work done in the 30 days that they had for each of these quarters to prepare, visit all their retailers and then get back and place their orders. So she left out a number of them and the record shows that she was not successful. She said that I think four out of the six retailers in Montana she had always gone to because she didn't go see them and did hotel setups. They didn't come to view the product and I guess didn't place orders. She said 15 out of the 30 total that she had either she didn't get to see or they didn't see the product at all. She was having to ask people to drive three hours to come and view the product which she thought was somewhat insulting and apparently they did too. One of the retailers in Montana testified I'm not going to do that. So when you look at the totality of the circumstances there is sufficient evidence on which to sustain the district court's findings and judgment. It started at the beginning when she took this new job with a base salary of $68,000 a year. They reduced it just arbitrarily by 23% over a year and a half I think down to $52,500. Then a short time later was when Mr. Winterhalter replaced her previous boss and at that time she explained to him Wyoming's been taken off my plate but it's still very challenging. Right at the time he was planning to give her all this additional work is when she said I've just got it under control. Now I'm not seeing some of these remote retailers. I can do it. He didn't tell her. He was about to increase her workload. He lost one of his salesmen. Instead of splitting that gentleman's work up he gave it all to Connie even though he knew she was already stressed out, already physically thought it was physically impossible to do any more work. Then you can see the string of emails that went only from her to him. He never responded, just saying here's the problems. I've researched it. I can't do it in the time allowed. He wouldn't respond. He wouldn't help her. He went on vacation. She kept asking him please give me help. I just can't do it again. Then the three options that Your Honor pointed out that were given to her at the last second, she couldn't continue to do it. He made no offers. He was going to change things. And even at the very last minute when he said we'll meet with you, he admitted to the magistrate judge that I didn't have any plans at that point. I just wanted her not to bad mouth us at the sales meeting and then move on. So all of those facts establish that this was a constructive discharge, that the court's decision was not clearly erroneous. Thank you, counsel. I would urge this court to review the record. I'm not going to address the many misstatements of facts that my colleague just made. We do address them in the reply brief. Is it true that this issue of good cause was never tried before the district court? No, that is what the issue of constructive discharge is all about. Constructive discharge is, if you look at the statute, the statute says it defines what constructive discharge is. I know what it says. Discharge includes a constructive discharge. I know what it says, so I'm surprised when Mr. Paul says, well, that issue never came up in the district court. Well, I would disagree with him. That's what the case was about, was whether or not there was good cause for this so-called constructive discharge. In other words, whether it was a quit or whether she had been forced to quit. And that was... Finding on good cause by the district court? Because I didn't, you know, I couldn't, I didn't see one. Aren't you sort of talking past each other now? I mean, you were arguing whether or not this was a constructive discharge to begin with. I didn't see that you put on the legitimate business reason defense. You were just arguing this is a change in terms of conditions, which by its nature can't be a constructive discharge. Wasn't that your theory at trial? That was one of the theories at trial. Yes, Your Honor, and it's one and the same thing. See, that's what I mean, is you're kind of talking past each other because in a legitimate business reason case, you usually put on affirmative evidence as to some broader plan and so forth and assert that specifically as a defense. Well, first of all, it's the employee's burden. That's what the case says. It's not our burden to prove legitimate business reason. I know about that in Buck. It is the – you know Buck better than I do, Your Honor. So where was my thought? Just left my head. Sorry, I didn't mean to. I'm sorry. I just lost my thought. But let me ask that question about the burden of proof because the statute says, right, a discharge is wrongful only if, and the B is, discharge was not for good cause. Now, employee have the burden of proving a negative? The employee has a burden of proving that the reasons given were either false whimsical – Her discharge was not for good cause. Correct. She has to prove a negative. She has to prove that Nike had no legitimate business reasons for doing what it did, for structuring the territory the way it was. Your Honor, if I might, if you were to conclude the opposite of that, what you would be doing is establishing two different standards, one standard for a constructive discharge and another standard for an actual discharge. Perhaps. But let's see. It's sort of the contrary of how we would – and you do employment law, so you know this – that if we're doing the McDonnell-Douglas analysis on discrimination, it's a burden of rejoinder that the employer has. And I think most people would assume that's what happens under the Montana statute. I hadn't really considered showing the absence of legitimate reasons as being any more than a prima facie showing. And maybe, again, we're talking – everybody's talking past each other, but she did say, look, you can't do this and, therefore, there's no legitimate reason. That seemed to be the theory of the case. They may not have stated it that way. Correct. And we did talk about in our preparation about whether or not this is really sort of a burden-shifting allocation. And even if you do assume that there's kind of a Title VII procedural aspect to this, it works the same way. The evidence was clear here. Nike put on evidence that it was moving to an online ordering system. And the fact that Nike was saying it is okay if you do not physically meet at the premises of these retailers, it's fine with us, that demonstrates the legitimate business reason. It was structuring how it was going to service these accounts, and she didn't like it. The Montana Supreme Court – I'd like to end with this. Oh, my time is going up as the clerk warned me. The Montana Supreme Court has admonished the trial courts here. It is inappropriate for the courts to become involved in the day-to-day employment decisions of business. And I would suggest to this court that that's exactly what the trial court did here. She made a judgment as to whether or not it was fair for Nike to give this woman a difficult job and, as a result, gave her four years' worth of wages, which is not what the statute was intended to do. Thank you. Thank you very much. The case, Mr. Chair, will be submitted.
judges: B. Fletcher, Tashima, Thomas, Cjj